The Indiana, Bloomington and Western Railway Co. *v.* Finnell *et al.*

Filed Dec. 21, 1888.

---

No. 13,141.

THE INDIANA, BLOOMINGTON AND WESTERN RAILWAY COMPANY *v.* FINNELL ET AL.

SPECIAL VERDICT.—*Improper Matter.*—*Venire de Novo.*—It is the office of a special verdict to find the facts. Evidence or conclusions of law inserted therein will be disregarded, and if, stripped of improper matter, the verdict is yet sufficient to support a judgment either way under the issues, a motion for a *venire de novo* will not lie.

SAME.—*Defective Verdict.*—*Motion for New Trial.*—If a special verdict fails to find facts established by the evidence, or finds facts not established, the remedy is by a motion for a new trial, and not by a motion for a *venire de novo.*

RAILROAD.—*Right of Way.*—*Deed.*—*Acceptance.*—*Estoppel.*—Where a railroad company, in pursuance of a contract with a land-owner, demands and accepts and places upon record a deed for a right of way, it can not afterwards object to the sufficiency of the deed, or question the authority of the person making the contract.

SAME.—*Consideration for Deed.*— *Contemporaneous Parol Contract.*—Where, contemporaneously with the execution and acceptance of a deed to a right of way, the parties orally agree that the consideration for the deed is the payment of a certain sum of money by the railroad company, and the performance by it of certain conditions, within a reasonable time, the railroad company is liable according to the terms of that

contract (which is assumed to be valid, as the question is presented), and a prior written contract between it and the land-owner becomes immaterial.

From the Marion Circuit Court.

*C. W. Fairbanks, J. A. New* and *E. Jacoby,* for appellant.
*L. H. Reynolds, M. Moores* and *C. G. Offutt,* for appellees.

ZOLLARS, J.—It is charged in appellees' complaint that, in consideration of a grant by them to the railway company of a strip of land upon which to construct and operate its road, that corporation agreed to pay to appellees $500, fence the way so granted on both sides through their land, and build two farm crossings for their convenience. It is further charged that the railway company has failed and refused to build and construct the fences and farm crossings.

The purpose of this action is to recover the damages which, it is averred, resulted from the breach of the contract on the part of the railway company.

The jury returned the following special verdict:

"We, the jury, having been directed by the court, at the request of the plaintiffs herein, to return a special verdict in writing, upon all the issues in the above entitled cause, do find specially the following facts, that is to say:

"1. On May 18th, 1881, the defendant was, and still is, a railroad corporation, organized and existing under and by virtue of the laws of the States of Ohio, Indiana and Illinois, and being desirous of surveying, locating and constructing a railroad from the city of Indianapolis, Indiana, to the city of Springfield, Ohio, and through and across lands of the plaintiffs, situated in Hancock county, Indiana, and described as follows, viz., the southwest quarter, section numbered three (3), in township sixteen (16) north, of range numbered seven (7) east, of which lands the plaintiffs then were the owners in fee simple, the defendant, with the plaintiffs, entered into a written contract, which contract was executed, acknowledged and delivered by plaintiffs to the de-

fendant, and was accepted by the defendant, and was in the words and figures as follows, to wit:

" ' This agreement, made and entered into between James S. Finnell and Elizabeth A. Finnell, his wife, of the county of Hancock and State of Indiana, of the first part, and the Indiana, Bloomington and Western Railway Company, a corporation existing under and by virtue of the laws of the States of Ohio, Indiana and Illinois, of the second part, witnesseth: That,

" ' Whereas the said party of the second part is desirous of surveying, locating and constructing a railroad from the city of Indianapolis, Indiana, to the city of Springfield, in the State of Ohio, and it is rendered probable that said railway may be finally located over the lands of the party of the first part, situated in the county of Hancock, in the State of Indiana, and described as follows : The southwest quarter, section numbered three (3), in township numbered sixteen (16) north, of range seven (7) east; said company to fence said road where the same passes over said land, within a reasonable time after the same is completed, and to put in two farm crossings on said land.

" 'And whereas it is considered that if the said road is built over the land of the parties of the first part, above described, said road will greatly benefit and enhance the value of the same.

" ' Now, in further consideration of the sum of one dollar, to us in hand paid by said company, receipt whereof is hereby acknowledged, we do hereby agree and by these presents bind ourselves, our heirs, executors, administrators and assigns, that if the line of railway of said Indiana, Bloomington and Western Railway Company shall be finally located over the said above described land within the time fixed by its charter, to make, or cause to be made, to said company, as soon as said line of railway shall be located, a good and sufficient deed, clear of all encumbrances, for a strip of said land fifty feet wide on each side of the center stake or center line of

said railway, as located, and that the said company may at any time enter upon and use said land for the purpose of locating, building, operating and maintaining said railway.

" 'And it is further agreed that said company shall, upon the delivery of said deed, pay to the party of the first part the sum of five hundred dollars as a further consideration for the said land.

" ' In witness whereof the parties of the first part have here-unto set their hands and seals, this 18th day of May, 1881.

" ' JAMES S. FINNELL.    [Seal.]
" ' ELIZABETH A. FINNELL.    [Seal.] '

" To said contract was and is attached a certificate of ac-knowledgment in the words and figures following, to wit :

" ' STATE OF INDIANA,
" ' HANCOCK COUNTY, ss. :

" ' Before me, William C. Barrett, a notary public in and for said county, this 18th day of May, A. D. 1881, personally appeared the within named James S. Finnell and Elizabeth A. Finnell, his wife, and acknowledged the execution of the annexed instrument.

" ' Witness my hand and notarial seal, this 18th day of May, A. D. 1881.                    WILLIAM C. BARRETT,
" ' *Notary Public.*' "

" Said contract was delivered by plaintiffs to one Albert Emerson, an authorized agent of defendant, and was accepted and placed of record by defendant upon the 25th day of May, 1881, in the recorder's office of Hancock county, Indiana.

" 2.  On June 22d, 1881, defendant demanded of plaintiffs, who then were, and now are, husband and wife, a warranty deed to a strip of land through plaintiffs' said land, pursuant to said contract, and plaintiffs being, upon said day last named, still the owners in fee simple of said real estate, and in pos-session of the same, executed, acknowledged and delivered to the said defendant a deed of general warranty to a strip of land one hundred feet in width, being fifty feet wide on each

side of the center stakes or center line of said railway, as located, which land then was free and clear of all encumbrances, and was accepted by defendant as a complete execution and fulfilment by the plaintiffs of said contract of sale. Said deed was caused by the defendant to be recorded in the office of the recorder of Hancock county, Indiana, and contained a correct description of the land now occupied by defendant for its right of way through said real estate and of land which was then and there turned over to defendant by plaintiffs, and was accepted by said defendant and occupied as and for its right of way.

"3. At the time of the execution and acceptance of said deed, it was understood and agreed by the parties thereto, by an oral agreement contemporaneous therewith, that the consideration for said deed was the sum of five hundred dollars in money, and a good and sufficient fence upon both sides of said right of way where the same should, and did, cross plaintiffs' said land, with two farm crossings upon said land; such fence and farm crossings to be constructed within a reasonable time after the completion of the said railroad by defendant, and at defendant's expense, which fence and farm crossings were a part of the agreed consideration for said deed, and the purchase and sale of said right of way.

"4. Defendant has surveyed, located and constructed, and now operates, a line of railway, diagonally across plaintiffs' said land, and has appropriated to its own use a considerable portion of said land; said line of railway, between Indianapolis, Indiana, and Springfield, Ohio, was fully completed June 1st, 1882, and has been in operation since August 1st, 1882, since which time defendant has been running its locomotives and cars over said line of railway, and upon and across said land conveyed by plaintiffs to said defendant.

"5. After a reasonable time had elapsed after the completion of said road, and before this suit was brought, plaintiffs demanded of defendant that defendant construct a fence and farm crossings between said right of way and plaintiffs'

said land, but the defendant wholly failed, neglected and refused to construct said fence or farm crossings for plaintiffs, and defendant has given plaintiffs nothing in lieu of such fence and farm crossings, and plaintiffs have not waived or relinquished their claim for such fence and farm crossings.

" 6. Said written contract was entered into by plaintiffs with defendant through one Albert Emerson, who was then in the employ of said defendant, and who had a general authority from the defendant to purchase for the defendant such lands in Hancock county, Indiana, as he thought necessary for defendant's right of way, from the different landowners along the proposed line of said road. The written contract, made by defendant with plaintiffs, was made by said Emerson, in his capacity as agent for defendant for the general purchase of the right of way for defendant, and said Emerson did not exceed his authority in making said contract, and his act as such agent, in making such contract, was ratified by the defendant.

" 7. At the time this suit was brought, the necessary cost of properly preparing the land for the erection of a fence along the right of way was sixty dollars.

" 8. At the time this suit was brought, the cost of erecting a good and sufficient fence enclosing the said right of way, and its value when erected, was four hundred and fifty dollars.

" 9. At the time this suit was brought, the cost of putting in two farm crossings and necessary gates, and their value, was thirty dollars.

" 10. If, upon the facts found above, the plaintiffs are entitled to recover, we, the jury, find for the plaintiffs, and assess their damages at five hundred and forty dollars.

" WILLIAM KERR, Foreman."

The railway company, by its attorneys, moved for a *venire de novo*. That motion was overruled, and judgment rendered for the plaintiffs, appellees here.

The argument by counsel for appellant is confined to the

alleged error of the court below in overruling the motion for a *venire de novo*. They contend that that motion should have been sustained for the reason that the special verdict is made up in part of conclusions of law, which should be disregarded in passing upon its sufficiency, and that when they are eliminated there is not enough left upon which to predicate a judgment.

It is well settled in this State, that it is the office of a special verdict to find the facts, and not the evidence or conclusions of law. It is, also, as well settled, that it does not follow that because a special verdict may contain evidence, conclusions of law, facts without the issues, or fails to find facts proven, a motion for a *venire de novo* must be sustained. Matters thus improperly found will be disregarded. But if, stripped of those matters, the verdict is yet sufficient to lead to and support a judgment either way under the issues as made by the pleadings, a motion for a *venire de novo* will be overruled. If such a verdict fails to find facts established by the evidence, or finds facts not established by the evidence, the remedy is by a motion for a new trial, and not by a motion for a *venire de novo*.

One of the points made in argument is, that if the conclusions of law be eliminated from the finding upon that subject, there will not be sufficient left to show that appellees executed and delivered a deed for the land, as stipulated in the written agreement upon which they, in part, at least, rely. In the second finding it is stated that, on the 22d day of June, 1881, the railway company demanded of plaintiffs a warranty deed for a strip of land, pursuant to the contract; that they executed, acknowledged, and delivered to the railway company a deed of general warranty for a strip of land; that the deed was accepted by the railway company as a complete execution and fulfilment of the contract by the plaintiffs, and that it caused the deed to be recorded. It is further shown by that finding, in connection with the fourth, that

the railway company took possession of the strip of land described in the deed and constructed its road thereon.

It is thus clearly shown that the railway company accepted the deed as tendered, and constructed its road upon the land therein described. It is a matter of no consequence, therefore, whether or not the jury might find as a fact that the deed was a warranty deed; nor, indeed, is it material whether the deed was a warranty deed or not. By the acceptance of it as shown, the railway company must be held to have regarded it as sufficient. See *Louisville, etc., R. W. Co.* v. *Sumner*, 106 Ind. 55 (62).

It is further contended that all of the findings that Emerson was an agent of the railway company, with authority to purchase lands upon which to construct the road, are conclusions of law, and should be disregarded, and that when those conclusions are eliminated there is nothing left to show that the railway company was represented by any one who had authority to represent it in the making of the written contract set out in the special findings.

The conclusion we have reached as to the verdict as a whole, renders it unnecessary for us to decide as to whether or not the findings as to Emerson's agency and authority are conclusions of law. Similar questions have been involved and decided in former cases, and a further discussion is not necessary here.

It is stated in the second finding that the railway company demanded a deed from appellees pursuant to the written contract. It is plain enough that in the making of that demand the railway company was represented by some one with the proper authority, because the deed was accepted and placed upon record, and the land was taken possession of and the road constructed upon it.

The demand by the railway company for the deed " pursuant to said contract," indicates pretty strongly a knowledge on the part of the railway company of the terms of the writ-

ten contract, and a ratification of all that had been done by Emerson in the execution of it.

We place our decision, however, more especially upon the third finding. It is therein stated, as will be observed, that at the time of the execution and acceptance of the deed from appellees, it was understood and agreed by the parties thereto, by an oral, contemporaneous agreement, that the consideration for said deed was the sum of $500 in money, and the building and construction by the railway company, within a reasonable time after the completion of the road, of fences on each side thereof through appellees' land, and two farm crossings.

No question is made, or could be made here, as to whether or not that contract should have been in writing, nor as to whether or not it is in any way in conflict with the terms of the deed.

The terms of the deed are not set out in the special findings, and we can not look from them to the evidence in search of a fact upon which a legal question might by some possibility be made to hinge. If any question could, in any event, be made as to the contract not being in writing—a question which counsel have not made here, and which we do not decide, and in relation to which we indicate no opinion—the time to make it had passed when the verdict was reached. In passing upon the verdict, we must assume that the evidence establishing the oral contract was admitted without objection, and treat the contract as valid and obligatory upon the parties. As bearing somewhat upon the question under discussion, see *Stockwell* v. *State, ex rel.,* 101 Ind. 1 (14 and 15).

The third finding, in connection with the second, shows clearly enough that the oral contract was made with the railway company, because it shows that it was made at the time the deed was demanded and accepted, and we have determined that it is sufficiently shown that the deed was demanded and accepted, by a proper representative of the railway company.

The Indiana, Bloomington and Western Railway Co. *v.* Finnell *et al.*

When we have determined that the contract made at the time the deed was executed is valid and obligatory, the prior written contract becomes immaterial.   Whether the oral contract be treated as a restatement and ratification of the prior written contract, or as a subsequent and independent contract, the railway company is liable in damages for its violation.

It is stated in the fifth finding that the plaintiffs, after the expiration of a reasonable time, etc., made a demand upon the railway company for the construction of the fences and farm crossings.

It is insisted in argument that the finding is defective, because it does not name the person, officer or agent of the railway company upon whom the demand was made. As no argument is made, or authorities cited, to show that such a demand was necessary, no further notice of the finding need be taken.   It may not be improper to remark, in passing, however, that the findings show that the construction of the road was completed on the 1st day of June, 1882, and that this action was not commenced until the 21st day of December, 1883.

Other criticisms are made upon the special verdict about which it is not necessary for us to express an opinion.   We are not to be understood, however, as commending the verdict as a model finding of facts.

Judgment affirmed, with costs.

Filed Dec. 22, 1888.